NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 17-1782

_____

KRISTEN ANN DAVIES,

Appellant

v.

FIRST RELIANCE STANDARD LIFE INSURANCE COMPANY

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-15-cv-02348)
District Judge: Honorable John E. Jones, III

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 6, 2017

Before: JORDAN, HARDIMAN, and SCIRICA, *Circuit Judges*.

(Opinion Filed: November 13, 2017)

_____

OPINION*

_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

HARDIMAN, *Circuit Judge*.

Kristen Ann Davies appeals a summary judgment denying her claim for long-term disability benefits under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–461. We will affirm, essentially for the reasons stated by the District Court in its thorough and cogent opinion.

I[1]

A pharmaceutical sales representative, Davies stopped working in August 2011 and requested disability benefits from her employer's insurer, First Reliance Standard Life Insurance Company. First Reliance approved the claim, and Davies's disability payments began to accrue in January 2012. Like many policies, the one issued by First Reliance entitled Davies to receive disability payments for 24 months if she was unable to perform her regular occupation, but she would receive payments beyond that time only if she was unable to perform any occupation.

As the 24-month period was winding down, First Reliance asked Davies to submit to an independent medical examination. After reviewing Davies's medical records and interviewing her, the examining physiatrist (who was chosen by First Reliance) observed that "[t]he majority of her current complaints seem to be of a psychological nature . . . ."

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331. *See* 29 U.S.C. § 1132(a)(1)(B). We have jurisdiction under 28 U.S.C. § 1291.

App. 821. He also concluded that Davies was "capable of sedentary activities, including work," despite her fibromyalgia, chronic fatigue, and "[d]epression/anxiety." *Id.*

Relying heavily on the physiatrist's opinion, First Reliance informed Davies that her disability benefits would be terminated at the end of the "regular occupation" period. Its decision was based on two factors: (1) Davies could still perform "a sedentary occupation"; and (2) even if she had been totally disabled from performing any occupation, the policy's limitation on benefits for disabilities "caused by or contributed to by mental or nervous disorders" barred her from receiving additional benefits because, according to Davies's own treating physicians, "depression and anxiety are amongst [her] primary diagnoses . . . ." App. 383–84. Davies, through her mother, appealed First Reliance's decision and submitted records from her treating physicians, along with information from a pharmacy listing possible side effects of her medications and descriptions of her mother's "own, regular first-hand interaction with her daughter." Davies Br. 10. The appeal submission included a fall 2013 note in which Davies's psychiatrist stated: "Though patient does have ADHD and anxiety, they are being aggravated by her pain and medical situation . . . ." App. 890.

In consideration of Davies's appeal, First Reliance located a rheumatologist to perform another independent medical examination. After summarizing Davies's medical history and records the rheumatologist concluded after an examination that "no organic musculoskeletal disease such as fibromyalgia . . . corroborate[d] all of her multiple

3

subjective complaints." App. 964. Accordingly, First Reliance upheld its prior decision and sent Davies a denial letter that included summaries of records from both her treating physicians and the independent medical examiners.

Davies sued First Reliance under ERISA, claiming it had improperly stopped paying disability benefits. Davies and First Reliance filed cross-motions for summary judgment. Finding that First Reliance's benefits determination was not arbitrary and capricious, the District Court entered summary judgment in favor of the insurer and denied Davies's motion. Davies filed this appeal.

## II[2]

Davies argues that First Reliance's claim determination (A) is not entitled to any deference; and (B) was improper because she established a total disability from any occupation, and the policy's "mental or nervous disorders" limitation does not apply. We address each argument in turn.

## A

The District Court was right to reject Davies's argument that the Court should apply something more than the "arbitrary and capricious" standard that usually applies to a denial of benefits where, as here, the administrator has "fiduciary discretionary

---

[2] We review summary judgments de novo, applying the same standard as the District Court. *Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 413 (3d Cir. 2011). We also review de novo the "district court's determination of the proper standard to apply in its review of an ERISA plan administrator's decision . . . ." *Id.*

authority to determine eligibility . . . ." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). In *Estate of Schwing v. Lilly Health Plan*, 562 F.3d 522 (3d Cir. 2009), we squarely rejected the argument that a structural conflict of interest—which arises when the same entity administers benefits and pays claims—necessarily demands increased scrutiny. *Id.* at 525–26. We concluded that *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105 (2008), abrogated this "sliding scale" approach, so courts should instead "apply a deferential abuse of discretion standard of review across the board and consider any conflict of interest as one of several factors . . . ." *Schwing*, 562 F.3d at 525. The District Court correctly applied this binding precedent.

## B

Not only is the abuse of discretion standard "deferential" and "difficult to overcome," App. 20, the policy itself sets a high bar after 24 months. Under its terms, Davies had to be totally disabled from *any* occupation. And even if she were totally disabled, the cause of her disability had to be independent of her depression, anxiety, and other non-physical issues. Because that limitation precludes further benefits for disabilities "caused by *or contributed to by* mental or nervous disorders," App. 46 (emphasis added), the District Court correctly recognized that Davies "must establish that it was arbitrary and capricious for First Reliance to determine that her physical conditions *alone* did not render her totally disabled from performing any occupation," App. 19 (emphasis added).

5

The problem for Davies is that the medical evidence she needs to support her claim that she is totally disabled from any occupation also confirms that her depression and anxiety contribute to her disability. Davies concedes that the record is replete with references, several of which the District Court listed and which we need not reiterate here, linking her physical and psychiatric conditions. Davies Br. 27. In fact, the evidence Davies cites is more than sufficient to establish that First Reliance's termination decision was not arbitrary and capricious. *See, e.g.*, Davies Br. 6 (according to Davies's treating psychiatrist, hers is a "complicated case and it is very hard to separate how much [of her] symptoms are coming from depression").[3]

And as the District Court correctly observed, what little evidence Davies presents that does *not* link her physical and psychiatric conditions—her mother's observations and subjective beliefs, criticisms of the independent rheumatologist's report, and potential side effects of her medications—does not satisfy her burden to show that she is physically incapable of performing any occupation. The independent medical examiners' opinions

---

[3] Davies points out that First Reliance explained in a letter that the limitation applied if the claimant's "*main disability* occur[ed] as a result of a mental or nervous disorder." App. 330 (emphasis added). But it was within First Reliance's "fiduciary discretionary authority to determine eligibility for benefits [and] to construe the terms of the plan" when it terminated her benefits two years later. *See Firestone*, 489 U.S. at 115. In any event, Davies's own psychiatrist classified her mental diagnoses as "primary" and her physical conditions "secondary." App. 422–23.

that Davies was not totally disabled merely reinforce the conclusion that a "multitude of evidence" already supports. App. 17.

Our assessment of the structural and procedural factors underlying First Reliance's decision does not alter this conclusion. "Since *Glenn*, we have only been willing to disturb an administrator's decision based on a conflict of interest if evidence either suggests the conflict actually infected the decisionmaking or if the conflict is one last straw that calls a benefits determination into question." *Dowling v. Pension Plan for Salaried Emps. of Union Pac. Corp. & Affiliates*, 871 F.3d 239, 251 (3d Cir. 2017). We agree with the District Court that many of Davies's asserted "procedural shortcomings" are conclusory and unsupported. Others, such as an allegation that a First Reliance claim reviewer's notes "assuming" Davies "seem[ed]" to have the capacity for sedentary work were improper, App. 299–300, are either inconclusive or unpersuasive in the face of ample support for the termination decision found in the records of Davies's own treating physicians.

For these reasons, we find no error in the District Court's conclusion that, taking into account "the structural conflict of interest at play, the procedural inadequacies argued by [Davies], and all of the medical evidence available to First Reliance in making its benefits determination," First Reliance's decision to terminate Davies's benefits was not arbitrary and capricious. App. 20. Accordingly, we will affirm the judgment of the District Court.